Ahren A. Tiller Esq. [SBN: 250608]
Email: ahren.tiller@blc-sd.com
Brett F. Bodie Esq. [SBN: 264452]
Email: brett.bodie@blc-sd.com
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone: (619) 894-8831
Facsimile: (866) 444-7026

Attorneys for Plaintiff
Brian Gabriel Barker

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BRIAN GABRIEL BARKER,

Plaintiff,

vs.

INAZIN LENDING d/b/a RISE UP LENDING; DAKOTA ECONOMIC DEVELOPMENT CORPORATION; SHANE THIN ELK, an individual; and DOES 1 through 20, inclusive,

Defendants.

Case No.:

**COMPLAINT FOR DAMAGES FOR (1) VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. CODE §§ 1788-1788.33); AND (2) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227)**

**JURY TRIAL DEMANDED**

## <u>COMPLAINT FOR DAMAGES</u>

## INTRODUCTION

1. BRIAN GABRIEL BARKER (hereinafter referred to as "Plaintiff"), by and through his Counsel of record, brings this action against INAZIN LENDING d/b/a RISE UP LENDING ("Rise Up"); DAKOTA ECONOMIC DEVELOPMENT CORPORATION ("DEDC"); SHANE THIN ELK, in his individual capacity

("Thin Elk"); and DOES 1 through 20, inclusive (collectively, "Defendants"), pertaining to actions by Defendants to unlawfully collect a debt allegedly owed by Plaintiff, including but not limited to, collection via the use of an Artificial or Prerecorded Voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" [Cal. Civ. C. §§ 1788-1788.33]), thereby invading Plaintiff's privacy, and causing Plaintiff damages.

2. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system. The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others. The legislature's explicit purpose of enacting the Rosenthal Fair Debt Collection Practices Act of California (hereinafter "RFDCPA") was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.[1] Cal. Civ. Code § 1788.17 incorporates the FDCPA into the RFDCPA, by stating that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

3. The Telephone Consumer Protection Act (hereinafter referred to as "the TCPA") was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v.*

[1] CA Civil Code §§ 1788.1(a)-(b)

*Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

4. In enacting the TCPA, Congress specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, ¶ 13, 105 Stat. 2394 (congressional findings, codified as note following 47 U.S.C. § 227). See also, *Mims,* 132 S. Ct., at 744.

5. As the Ninth Circuit stated in *Henderson v. United Student Aid Funds, Inc.*:

> Under the TCPA, it is unlawful to "to make any call (other than . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Telemarketers, debt collectors, and others obtain phone numbers consumers did not consent to be called on through skip tracing. Because consumers did not provide … "prior express consent" to be called on those numbers…. Therefore, if the numbers were also auto dialed, the calls violated the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii).
>
> *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1071-72 (9th Cir. 2019).

6. Further, as the United States District Court for the Central District of California explained in *Mata v. Veros Credit, LLC*, No. SA CV 16-98-DOC (JCGx), 2017 U.S. Dist. LEXIS 114373, at *9 (C.D. Cal. Jan. 20, 2017),

> It is sufficient for a plaintiff to allege the defendant used an "artificial or prerecorded voice" to place a call, "without any need to consider whether those plaintiffs also adequately alleged use of an ATDS." *Flores*, 2015 U.S. Dist. LEXIS 92176, 2015 WL 4340020, at *12; see also *Robinson v. Midland Funding, LLC*, No. 10CV2261, 2011 U.S. Dist. LEXIS 40107, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011) and *Reyes v. Saxon Mortgage Servs., Inc.*, No. 09CV1366, 2009 U.S. Dist. LEXIS 125235, 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009).

7. Allegations of the use of an artificial or prerecorded voice to place a call are sufficient alone to properly plead a claim under the TCPA.

> The Vaccaro court held, and I agree, that "[b]ecause the provision is written in the disjunctive, plaintiffs can state a claim under the TCPA by alleging the use of (1) an 'artificial or prerecorded voice' or (2) an ATDS." 2013 U.S. Dist. LEXIS 99991, [WL] at *n. 2.; see also

*Holcombe v. Credit Protection Ass'n, LP*, No. 14-cv-14, 2014 U.S. Dist. LEXIS 122054, 2014 WL 4252277, at *3 (M.D. Ga. Aug. 28, 2014); *Lardner v. Diversified Consultants Inc.,* No. 13-cv-22751, 17 F. Supp. 3d 1215, 2014 U.S. Dist. LEXIS 64205, 2014 WL 1778960, at *6 (S.D. Fla. May 1, 2014); *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06342, 2011 U.S. Dist. LEXIS 24908, 2011 WL 881550, at *3 (N.D. Ill. March 11, 2011).

*Warnick v. Dish Network LLC,* Civil Action No. 12-cv-01952-WYD-MEH, 2014 U.S. Dist. LEXIS 138381, at *36-37 (D. Colo. Sep. 30, 2014).

8. See also the United States Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.8 (2021) ("By contrast, Congress did impose broader prohibitions elsewhere in the TCPA. See, *e.g.,* 47 U.S.C. §§227(b)(1)(A) and (B) [prohibiting 'artificial or prerecorded voice' calls, irrespective of the type of technology used]").

9. Plaintiff makes the allegations contained herein on information and belief, except as to those allegations regarding himself, which are made and based upon personal knowledge.

## JURISDICTION AND VENUE

10. This action is based on Defendants' violations of the RFDCPA found in California Civil Code §§ 1788 - 1788.33 and the TCPA found in Title 47 of the United States Code Section 227, *et seq*.

11. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1331, as the unlawful practices alleged herein involve a federal question under the TCPA. This Court also has personal jurisdiction over each Defendant because, among other things, each Defendant knowingly participated in the making and collection of consumer loans to California residents over the Internet, Defendants purposefully directed their lending and collection activities at California residents, including Plaintiff, and the collection calls at issue were directed to Plaintiff at his cellular telephone in California.

12. The unlawful practices alleged herein occurred in California, in the County of Los

Angeles and violated California's Civil Code §§ 1788 - 1788.33.

13. This Court further has supplemental jurisdiction over Plaintiff's California Causes of action, pursuant to 28 U.S.C. § 1367(a), as Plaintiff's California state law claims are so related to Plaintiff's Federal TCPA claims in this action, that they form part of the same case or controversy.

14. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims alleged herein occurred in the County of Los Angeles, California, where Plaintiff resides and where the collection calls at issue were received. Furthermore, Defendants regularly conduct business within the State of California, County of Los Angeles, and Plaintiff resides in Los Angeles County, California.

## PARTIES

15. Plaintiff is, and was at all times mentioned herein, a natural person residing in the County of Los Angeles, in the State of California.

16. Plaintiff is a natural person from whom a debt collector sought to collect a covered debt (here, a consumer debt) that was due and owing or alleged to be due and owing from Plaintiff, and therefore Plaintiff is a "debtor" as that term is defined by Cal. Civ. Code § 1788.2(h).

17. Defendant INAZIN LENDING d/b/a RISE UP LENDING ("Rise Up") is an online lender that offers and originates consumer installment loans through the website www.riseuplending.com. Rise Up represents on that website that it is a wholly owned subsidiary of Defendant Dakota Economic Development Corporation, which it describes as "a sovereign economic arm, enterprise, and instrumentality of, and created for the benefit of, the Crow Creek Sioux Tribe" (the "Tribe"), a federally recognized Indian tribe located in South Dakota. Rise Up publishes the mailing address PO Box 636, Ft. Thompson, South Dakota 57339 on the www.riseuplending.com website, and also uses the mailing address PO Box

246, Ft. Thompson, South Dakota 57339. Rise Up is the originating creditor on the consumer loan at issue in this action and, in the ordinary course of its business, regularly engages in debt collection, itself and through its agents, with respect to consumer debts allegedly owed to it.

18. Defendant DAKOTA ECONOMIC DEVELOPMENT CORPORATION ("DEDC") is a corporation chartered under the laws of the Tribe. On information and belief, DEDC is the corporate parent of Rise Up. DEDC's Board of Directors authorized and approved the charter of Rise Up and governs Rise Up under that charter. DEDC uses the address 22508 South Dakota Highway 34, Fort Thompson, South Dakota 57339.

19. Defendant SHANE THIN ELK ("Thin Elk") is a natural person and is sued herein in his individual capacity. Thin Elk was, as of September 12, 2023, the "Commissioner" of the Crow Creek Financial Services Licensing & Regulatory Commission. Thin Elk signed Rise Up's certificate of licensure and issued Rise Up's license pursuant to and in accordance with the Tribe's Tribal Credit Code. On information and belief, Thin Elk is not a member of the Tribe. Instead, he is an enrolled member of a different Indian tribe located hundreds of miles from South Dakota. Thin Elk was also identified in the June 3, 2019 certificate of licensure as Commissioner of the Minto Financial Services Licensing & Regulatory Commission of the Native Village of Minto, an unrelated Indian tribe located in Alaska, and the purported licenses he issued for the two tribes' lenders contain the same verbiage, formatting, and signature. On information and belief, Thin Elk personally participated in, authorized, and/or ratified the lending and collection enterprise described herein by licensing and authorizing Rise Up to originate and collect the loans at issue, and his issuance of Rise Up's certificate of licensure lends the appearance of tribal regulation to a lending operation that is in fact funded, operated, and controlled by non-tribal persons and entities.

20. Defendant Thin Elk is sued in his individual capacity for money damages, as are

those of Does 1 through 20 who are natural persons. Tribal officials and employees sued in their individual capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties. See Pistor v. Garcia, 791 F.3d 1104, 1112 (9th Cir. 2015). In such a suit the employee, not the tribe, is the real party in interest, and neither the scope of the employee's employment nor any right to indemnification extends sovereign immunity to him. See Acres Bonusing, Inc. v. Marston, 17 F.4th 901 (9th Cir. 2021).

21. Defendants DOES 1 through 10, inclusive, are the persons and entities, whose true names and capacities are presently unknown to Plaintiff, that own, fund, operate, and control the lending and collection business conducted through www.riseuplending.com. On information and belief, Does 1 through 10 include one or more non-tribal companies and their officers, owners, and managers that are not chartered by the Tribe, are not owned by the Tribe, and are not arms, agencies, or instrumentalities of the Tribe, and that provide the capital used to fund the loans nominally made by Rise Up and operate all substantive aspects of the business, including the marketing, loan origination, underwriting, loan servicing, electronic funds transfers, customer service, call center operations, and collection of delinquent accounts. On information and belief, Does 1 through 10, acting in the ordinary course of their business and as agents of Rise Up, placed or directed the placement of the collection telephone calls to Plaintiff described herein, including the dialing practices, calling campaigns, and collection scripts used to place those calls, and the principal economic benefit of the Rise Up enterprise is received by Does 1 through 10 rather than by the Tribe.

22. Plaintiff's allegations concerning the operation and control of the Rise Up enterprise by non-tribal persons are made on information and belief, based on the following: the Tribe, through DEDC, has chartered a series of substantially similar internet lending entities, including Wahido Lending d/b/a River Valley Loans,

Bison Lending d/b/a Buffalo Lake Lending, Basswood Lending d/b/a Level Up Funding, Koda Lending d/b/a Helpful Lending, Dakota Lending d/b/a MyLoanSite, and Rise Up. Each of those entities has held a certificate of licensure signed by Defendant Thin Elk containing largely identical provisions. Additionally, the Tribe's River Valley Loans entity has been alleged in litigation in this Circuit to be funded, operated, and controlled, not by the Tribe, but by a non-tribal California loan-servicing company and its officers, which "operat[e] all substantive aspects of the business, including the funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections" of the loans, see *Fisher v. Welch,* No. 25-cv-1698-WQH-BJW, 2026 U.S. Dist. LEXIS 182457, at *10-12 (S.D. Cal. Feb. 17, 2026) (reciting the allegations of the complaint before it). Rise Up was established in 2023 as a wholly owned subsidiary of the same DEDC, *id*. at *11, and Rise Up's website, loan documents, payment mechanics, and consumer-facing operations follow the same pattern as those of the Tribe's other lending entities.

23. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 10 when they are ascertained through discovery.

24. On information and belief, the substantive business operations of the lending enterprise conducted through www.riseuplending.com, including loan approval and underwriting, funding, payment processing, customer service, and the collection call operations at issue in this action, are performed predominantly by persons who are not members of the Tribe, from offices located off the Tribe's reservation and outside the State of South Dakota. On information and belief, the Tribe receives only a small percentage of the revenues generated by that enterprise in exchange for the use of its name.

25. The website www.riseuplending.com and the companies and individuals responsible for the business conducted through it do business in California over the Internet, via email, via Automated Clearing House transactions, and over the

telephone, and Defendants sought out California residents, including Plaintiff, for such loans.

26. Each entity Defendant is a separately chartered or incorporated entity, and each must independently establish that it functions as an arm of the Tribe. On information and belief, Does 1 through 10 were not created by the Tribe, are not owned by the Tribe, are not controlled by the Tribe, and sell their loan-servicing and collection services into a broader commercial market. The substantive functions of the Rise Up lending and collection operation are performed predominantly by persons who are not members of the Tribe from offices located off the Tribe's reservation and the principal economic benefit of that operation is received by Does 1 through 10 and other non-tribal persons and entities rather than by the Tribe. Plaintiff therefore alleges, on information and belief, that Defendants do not function as arms of the Tribe with respect to the collection conduct at issue in this action, and that a money judgment on the claims alleged herein would not deplete tribal treasury funds.

27. At all times mentioned herein, each Defendant was the agent, servant, employee, or joint venturer of each of the other Defendants and, in doing the things alleged herein, was acting within the course and scope of that agency, service, employment, or joint venture, with the knowledge, consent, authorization, and/or ratification of the other Defendants. In particular, on information and belief, Does 1 through 20 placed the collection calls at issue as agents of Rise Up, with Rise Up's actual authority, and those calls were placed in the regular course of Rise Up's business of collecting the consumer debts allegedly owed to it.

28. Defendants DOES 11 through 20, inclusive, are entities and natural persons whose true names and capacities are presently unknown to Plaintiff, who therefore sues them by such fictitious names. On information and belief, Does 11 through 20 include the telephone dialing and messaging platform used to place the calls described herein, lead generators, skip-trace vendors, outside collection agencies,

the Independent Sales Organization and Originating Depository Financial Institution through which Rise Up obtains access to the Automated Clearing House network, and backend investors and note purchasers, none of which is an arm of the Tribe or entitled to sovereign immunity of any kind. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

29. Defendants Rise Up and Does 1 through 10 regularly attempt to collect, using the mails, electronic communication, and telephone, "consumer debts" allegedly owed to Rise Up, as that term is defined by Cal. Civ. Code §1788.2(f).

30. Each Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

31. When individuals owe Rise Up debts for regular payments on consumer loans, and other similar obligations, Rise Up, itself and through Does 1 through 10 and other agents acting on its behalf, collects on those consumer debts owed to it using the mail, electronic communications, and via the telephone. For example, when its customers are delinquent on their debts owed to Rise Up, as part of its routine business Rise Up calls those customers, sends them collection messages, letters by mail, and emails all seeking payment on the delinquent debt. The RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection," Cal. Civ. Code §1788.2(c), and, unlike the federal FDCPA, that definition includes a creditor collecting its own debts. The RFDCPA further defines "person" to include "a natural person." Cal. Civ. Code §1788.2(g). Therefore, Rise Up is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c) and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b), and Does 1 through 10, each of whom in the ordinary course of business regularly engages in debt collection on behalf of Rise Up and other lenders, are likewise "debt collectors" under Cal. Civ. Code §1788.2(c) and engage in "debt collection" under Cal. Civ. Code §1788.2(b).

32. Cal. Civ. Code § 1788.17 states that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive of, and shall be subject to the remedies in Section 1692k of Title 15 of the United States Code.

33. At all times relevant hereto, Defendants used, controlled, and/or operated a telephone system that was designed to place multiple calls to Plaintiff's cellular telephone using an artificial voice and/or prerecorded voice message ("Recorded Voice") as described in 47 U.S.C. § 227(b)(1)(A).

34. This case involves money, property, or their equivalent, due or owing, or alleged to be due or owing from a natural person by reason of a "consumer credit transaction." Thus, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

## GENERAL ALLEGATIONS

35. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

36. Defendant Rise Up issued Plaintiff a consumer installment loan through the website www.riseuplending.com on or before July of 2025 (the "Rise Up Loan"). The Rise Up Loan was taken out for, and used for, personal and household expenses.

37. Plaintiff made payments toward his Rise Up Loan when he took it out and continued making regular payments and maintained good standing on his Rise Up Loan until approximately September of 2025, when unfortunately, Plaintiff experienced financial hardship and was unable to maintain the regular payments.

38. Upon going into default on his Rise Up Loan, agents for Defendants called Plaintiff repeatedly and requested payment, often on consecutive days and at nearly the identical time each morning and did so using a Recorded Voice.

39. The collection calls were made to Plaintiff's cellular telephone.

40. Plaintiff sought out and retained an attorney to represent him with regard to the Rise Up Loan debt allegedly owed to Rise Up.

41. On November 12, 2025, Plaintiff's Counsel drafted and submitted for mailing a Cease-and-Desist letter, whereby Plaintiff's Attorney stated in writing that Plaintiff was revoking consent to call him via the use of a Recorded Voice, that Plaintiff had retained Counsel, and that Rise Up needed to cease calling Plaintiff pursuant to the RFDCPA ("Letter"). The Letter referenced the last four digits of Plaintiff's social security number next to his name, together with two additional variations of his name, to help Defendants identify Plaintiff's account.

42. The Letter informed Defendants that Plaintiff was represented by Counsel and thus constituted written notice pursuant to Cal. Civ. Code §§ 1788.14(c) that Plaintiff was represented by an attorney with respect to any and all debts allegedly owed to or serviced by Defendants, and request was thereby made that all communications regarding this alleged consumer debt must be directed exclusively to Plaintiff's attorney, and the Letter clearly revoked any prior consent to contact Plaintiff via the use of an automated dialing system, text, or other method, including but not limited to calls with a prerecorded or automated voice message.

43. The November 12, 2025, Letter was sent via Docsmit. Docsmit is a third-party company with no relation to Plaintiff or his Counsel. Docsmit's sole business is the sending of mail on behalf of customers. Docsmit provides a certificate of mailing and identifies the exact time a letter was sent.

44. Docsmit sent the November 12, 2025, Letter, on November 13, 2025, to each of the following addresses:

Inazin Lending dba Rise Up Lending
PO Box 636
Ft. Thompson, South Dakota 57339

and

Inazin Lending dba Rise Up Lending
PO Box 246
Ft. Thompson, South Dakota 57339

45. Docsmit included with the letter the following attestation of mailing:

> "*The information herein is certified by Docsmit.com, Inc. ("Docsmit") to be true and accurate as of the date and time this report was generated. All of the records relating to this communication were made at times proximate to those indicated. Docsmit has not permitted any of the parties hereto to modify the records.*"

46. The PO Box 636 address, in which the November 12, 2025 Letter was sent to is the mailing address for Rise Up identified on Defendants' website located at: www.riseuplending.com:




47. Therefore, Rise Up received the November 12, 2025, Letter at both addresses.

48. However, despite receipt of the November 12, 2025, Letter referenced above, which stated that Plaintiff had revoked consent to be called via a Recorded Voice and had retained counsel regarding the subject debt, representatives of Defendants have continued to call Plaintiff at least fifty (50) times since November 12, 2026, on his cellular telephone.

49. Plaintiff alleges that Defendants called Plaintiff at least fifty (50) times after receipt of the November 12, 2025, Letter, based on his recollection of the frequency of the calls, as well as the records of calls that he has in his possession.

50. Defendants, or their agents or representatives, called Plaintiff on his cellular telephone at least fifty (50) times since November 12, 2025.

51. Defendants called Plaintiff from a telephone number identified on Plaintiff's Caller ID as: (855) 680-7473, among other numbers.

52. The collection calls from Defendants that Plaintiff answered were brief, began after a noticeable delay, and delivered substantially identical scripted content on different dates, all indicative of the use of an artificial or prerecorded voice.

53. Additionally, sometimes Plaintiff answered calls from Defendants and there was a delay before the line made a sound, indicative of the use of an artificial or prerecorded voice by Defendants.

54. Furthermore, on a number of occasions, Plaintiff received calls from Defendants and when he answered there was no one present on the line at first, indicative of the use of an automated and/or prerecorded telephone system.

55. Sometimes when Plaintiff did not answer a call from Defendants, Plaintiff then received additional calls from Defendants in rapid succession, indicative of the use of a computerized phone system.

56. Plaintiff recalls answering some of the calls from Defendants and after a brief period of no response, an automated voice came on the line and began delivering what seemed to be a scripted message. On those occasions, Plaintiff subsequently terminated the call.

57. According to Plaintiff's recollection, the multiple calls contained an automated robotic type voice and were identical to the previously scripted calls, which is indicative of a prerecorded voice message using what appeared to be a computerized automated voice used in an attempt to collect upon the subject debt.

58. Thus, some of Defendants' calls to Plaintiff after receiving the Letter contained an

"artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

59. The multiple calls made by Defendants or their agents after receipt of the November 12, 2025, Letter, were therefore made in violation of 47 U.S.C. § 227(b)(1).

60. Despite receipt of Plaintiff's Attorney's Letter sent to Defendants' mailing addresses, instructing Defendants to cease calling Plaintiff's cellular telephone via the use of a Recorded Voice, which provided irrefutable notice that Plaintiff had revoked consent to call his cellular telephone by any means and that he had retained Counsel regarding this alleged debt, Defendants continued to contact Plaintiff repeatedly through April 30, 2026.

## CAUSES OF ACTION

## I.

## FIRST CAUSE OF ACTION

### Violations of California Rosenthal Fair Debt Collection Practices Act

### (California Civil Code § 1788.14(c))

61. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

62. When Plaintiff's Counsel sent the November 12, 2025, cease-and-desist Letter to Rise Up, Defendants were aware, or reasonably should have been aware, that Plaintiff was represented by an attorney.

63. Cal. Civ. Code §1788.14(c) provides in relevant part,

> No debt collector shall collect or attempt to collect a covered debt by means of the following practices:
>
> (c) Initiating communications, other than statements of account, with the debtor with regard to the covered debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by the attorney with respect to the covered debt and the notice includes the attorney's name and address and a request by the attorney that all communications regarding the covered debt be addressed to the attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply

> if prior approval has been obtained from the debtor's attorney, or if the communication is a response in the ordinary course of business to a debtor's inquiry.

64. By calling Plaintiff on his cellular phone at least fifty (50) times after receipt of the November 12, 2025, Letter from Plaintiff's Counsel, Defendants, and each of them, violated Cal. Civ. Code §1788.14(c).

65. As a result of the constant collection calls by Defendants, Plaintiff has experienced stress and irritability, as the constant and harassing collection calls by Defendants were overwhelming. Therefore, Plaintiff has suffered actual damages as a result of Defendants' violations of Cal. Civ. Code §1788.14(c).

66. Further, as stated previously, Cal. Civ. C. § 1788.17 incorporates the FDCPA into the Rosenthal Fair Debt Collection Practices Act, therefore if an individual violated 15 U.S.C. § 1692d, they in turn violate the RFDCPA.

67. 15 U.S.C. § 1692d(5) provides in pertinent part,

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

68. Defendants' conduct of placing collection calls to Plaintiff's cellular telephone on a near-daily basis for a period of more than two months — continuing after written notice that Plaintiff was represented by counsel with respect to the debt, after Plaintiff expressly revoked consent to be called, and after Plaintiff blocked the calling number on his cellular telephone — is conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt.

69. Therefore, Defendants' acts of calling Plaintiff at least fifty (50) times after receipt of the November 12, 2025, Letter, on a near-daily basis and over a period of more than two months, was a separate violation of 15 U.S.C. § 1692d(5),

which is incorporated into the RFDCPA via Cal. Civ. C. § 1788.17.

**II.**

**SECOND CAUSE OF ACTION**

**Negligent and/or Willful Violations of the TCPA**

**(47 U.S.C. § 227, *et seq.*)**

70. Plaintiff realleges and incorporates by reference all preceding paragraphs, inclusive, as if fully set forth herein.

71. Through the November 12, 2025, Letter sent by Plaintiff's Counsel, Plaintiff revoked any alleged consent for Defendants or their agents or representatives to call Plaintiff on his cellular telephone via the use of an artificial and/or prerecorded voice.

72. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent and/or willful violations of the TCPA, including but not limited to every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

73. To properly plead a TCPA claim under 47 U.S.C. § 227(b), Plaintiff must allege the following elements: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012). Because 47 U.S.C. § 227(b)(1)(A) is written in the disjunctive, the use of an artificial or prerecorded voice satisfies the second element in place of an ATDS. See *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163, 1172 n.8 (2021). To plead these elements as required will obviously include overlap with the very statute that a Plaintiff alleges was violated. See *Vaccaro v. CVS Pharmacy, Inc.,* No. 13-CV-174 - IEG (RBB), 2013 U.S. Dist. LEXIS 99991, at *6 (S.D. Cal. July 16, 2013) ("It does not follow that factual allegations that borrow or echo statutory language are necessarily legal conclusions. Factual allegations do not cease to be factual even if they quote a statute's language.")

74. Therefore, Plaintiff's allegations above regarding Defendants' conduct have satisfied all of the aforementioned requisite elements for a TCPA claim, thus Defendants violated 47 U.S.C. § 227(b)(1).

75. Rise Up is vicariously liable for the calls placed on its behalf by its agents, including Does 1 through 20.

76. Those of Does 1 through 10 who are natural persons are each individually liable for the violations of the TCPA alleged herein because, on information and belief, each had direct, personal participation in, or personally authorized, the dialing practices and calling campaigns through which the calls described herein were placed.

77. As a result of Defendants' negligent violations of 47 U.S.C. §227, *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages, for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §227, *et seq.*, the Plaintiff is entitled to an award of $1,500 in statutory damages for every one of Defendants' knowing and/or willful violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3).

79. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff having set forth the claims for relief against Defendants INAZIN LENDING d/b/a RISE UP LENDING; DAKOTA ECONOMIC DEVELOPMENT CORPORATION; SHANE THIN ELK; and DOES 1 through 20, inclusive, herein, respectfully requests this Court enter a Judgment against Defendants, and each of them, as follows:

a. As to the First Cause of Action, an award of actual damages pursuant to Cal. Civ.

Code §1788.30(a) according to proof;

b. As to the First Cause of Action, an award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b);

c. As to the First Cause of Action, an award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code §1788.30(c);

d. As to the Second Cause of Action, $500 in statutory damages for each and every one of Defendants' negligent violations of 47 U.S.C. §227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(B); and $1,500.00 in statutory damages for each and every one of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(b)(1), pursuant to 47 U.S.C. § 227(b)(3);

e. As to the Second Cause of Action, injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

f. For such other and further relief as the Court may deem just and proper.

Dated: October 12, 2026, By: BLC Law Center, APC

*s/ Ahren A. Tiller*
Email: ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands a trial by jury on all issues triable by a jury.

Dated: October 12, 2026, By: BLC Law Center, APC

*s/ Ahren A. Tiller*
Email: ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorney for Plaintiff